WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Nyssa Reed,<br><br>    Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>    Defendant. | No. CV-20-00496-TUC-JCH<br><br>**ORDER** |

Plaintiff Nyssa Reed ("Reed") brought this action under 42 U.S.C. §§ 405(g) & 1383(c)(3), seeking judicial review of a final decision by Defendant Commissioner of Social Security (the "Commissioner"). (Doc. 1.) This matter was referred to United States Magistrate Judge MacDonald for Report and Recommendation ("R&R"). (Doc. 14.) On August 15, 2022, Judge MacDonald issued an R&R finding the Administrative Law Judge ("ALJ") erred and recommending the Court reverse and remand the Commissioner's decision. (Doc. 30 at 40.) Defendant objects to the R&R's analysis and ultimate recommendation. (Doc. 31.) For the following reasons, the Court adopts the R&R in part, and reverses and remands the Commissioner's decision.

**I.   BACKGROUND**

The R&R ably described the facts, Defendant does not object to them, and the Court adopts them wholesale for brevity's sake. What follows is a summary.

In 2018, Reed applied for disability benefits, alleging disability due to multiple sclerosis ("MS"), asthma, scoliosis, and anxiety. *See* Administrative Record ("AR") 13.

The Social Security Administration denied Reed's original application and her subsequent application on reconsideration. AR 13. Reed requested an administrative hearing, which was held before ALJ Robert Spaulding in late 2019. AR 13.

At the hearing, Reed testified about the circumstances of her alleged disability that began in April, 2018. She related that an MS flare-up in February, 2018, coupled with rising temperatures in May, prevented her from returning to work. AR 41. Reed acknowledged that by June her MS flare-up was better, and that her medication for fatigue was extremely helpful. AR 41–42. She clarified that in June it was primarily severe heat-related issues that persuaded her neurologist to "keep her off work." AR 42. Reed also testified that she had another MS flare-up in August, but this was her last flare-up in over a year. AR 42. She described on-going "pseudo-flares"—symptoms that aren't normally documented or called in because they don't need medication, just "stuff [she] needs to do at home" like sleeping or using a heating pad. AR 42–44. When asked to describe in her own words why she cannot work, Reed identified a cycle of severe fatigue and over-exertion leading to "flares or pseudo-flares," coupled with worsening short-term memory problems. AR 43–44. She explained that "everything [she does] is trying to maintain a stress-free environment and trying to not over-exert [herself] or get too tired." AR 44.

The ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act. AR 16–30. The ALJ found that Reed's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record." AR 19. Reviewing the medical evidence, the ALJ noted that Reed's physical examinations were generally benign and showed that her medication was working and her condition was stable and improved. AR 19–20. The ALJ reviewed the opinions of several "consultative examiners" and found two opinions favorable to Reed unpersuasive because the opinions relied on general references to MS flaring symptoms without acknowledging the medical records do not indicate Reed suffered any flaring symptoms after August, 2018. AR 20. By contrast, the ALJ found another opinion that was unfavorable to Reed persuasive because it was based "on an

accurate discussion of the evidence of record" and reached conclusions "consistent with the totality of the evidence." AR 21. Finally, the ALJ relied on testimony from a vocational expert to find that Reed's limitations were consistent with work as a school secretary, a position she previously held. AR 22.

After the ALJ's unfavorable decision on January 28, 2020, the Appeals Council denied Reed's request for review. AR 1. Reed timely filed this cause of action. (Doc. 1.)

The R&R recommends the District Judge reverse and remand the Commissioner's decision for further consideration. (Doc. 30 at 40.) The R&R agreed with Reed's assertion that "[t]he central issue in this case is whether Ms. Reed's [MS] causes her to be off task or absent an unacceptable amount of time due to fatigue, flares, or potential flares." (*Id.* at 33 (citing Doc. 25 at 6).) The R&R found that the ALJ committed legal error in assessing Reed's MS symptom testimony. (*Id.*) The R&R also noted "serious concerns" with the ALJ's medical-evidence findings, and the ALJ's "failure to consider [Reed's] third party testimony, despite its availability." (*Id.* at 39–40.) The R&R asserted that "the evidence relied on by the ALJ did not actually discount [Reed's] testimony," and disputed the validity of the ALJ's decision to discount certain medical opinions or Reed's mother's statement. (*Id.* at 36–37.) The R&R concluded that the ALJ committed legal error by failing to set out "clear and convincing" reasons for discounting Reed's symptom testimony.

The Commissioner objects to the R&R because it "ignored the ALJ's specific findings regarding [Reed's] symptom allegations." (Doc. 31 at 2.) The Commissioner asserts the ALJ rejected Reed's symptom testimony for "different, and stronger and better supported reasons" than the R&R suggested. (*Id.*) These reasons include normal examination findings, Reed's failure to report frequent MS "pseudo-flares" to her providers, and Reed's admissions that medication provided good relief for her infrequent symptom recurrences. (*Id.* at 7.) The Commissioner contends the ALJ's decision is grounded on evidence that, over time, Reed's debilitating MS symptoms had improved to a point where she had been able to work with MS in the past and that she had not had any MS relapses since her symptoms had improved. (*Id.* at 2–3.) The Commissioner argues the ALJ properly

considered the objective medical evidence because the preponderance of the record supports his interpretation that Reed presented with largely non-disabling symptoms. (*Id.* at 4.) And, the Commissioner adds, even if the ALJ's evaluation of the objective medical evidence was in error, that error was harmless given the ALJ's proper consideration of the infrequency of Reed's reported symptoms and her response to treatment. (*Id.*)

## II.   STANDARD OF REVIEW

### a.   Report and Recommendation Review Standard

In reviewing a Magistrate Judge's R&R, "[a] judge of the court shall make a de novo determination of those portions of the report ... to which objection is made." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b); *United States v. Remsing*, 874 F.2d 614, 617 (9th Cir. 1989).

### b.   ALJ Decision Review Standard

An ALJ determining eligibility for Disability Insurance Benefits or SSI must evaluate whether a claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(a) & 1382(a)(3)(A). A five-step sequential evaluation governs eligibility for benefits under both programs. *See* 20 C.F.R. §§ 404.1520, 404.1571–76, 416.920 & 416.971–76; *Bowen v. Yuckert*, 482 U.S. 137, 140–142 (1987). The five-step process requires the claimant to show (1) she has not worked since the alleged disability onset date, (2) she has a severe physical or mental impairment, and (3) the impairment meets or equals a listed impairment or (4) her residual functional capacity ("RFC") precludes her from doing her past work.[1] If at any step the Commissioner determines that a claimant is or is not disabled, the inquiry ends.

An ALJ's decision may be reversed only when it is unsupported by substantial

---

[1] "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007). A plaintiff's residual functional capacity is what he can do despite existing exertional and non-exertional limitations. *Cooper v. Sullivan*, 880 F.2d 1152, 1155–56 n.5–7 (9th Cir. 1989).

evidence or constitutes harmful legal error. *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance, i.e., such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) *citing Young v. Sullivan*, 911 F.2d 180, 183 (9th Cir. 1990). "An error is harmless if it is 'inconsequential to the ultimate nondisability determination[.]'" *Treichler v. Comm'r of Soc., Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2015) (internal citation and quotation omitted). Put differently, "an error is harmless so long as there remains substantial evidence supporting the ALJ's decision and the error does not negate the validity of the ALJ's ultimate conclusion." *Molina v. Astrue*, 674 F.3d 1004, 1115 (9th Cir. 2012) (internal quotation marks and citations omitted), *superseded by regulation on other grounds*.

### III. ANALYSIS

Here, the Commissioner objects to multiple aspects of the R&R's analysis and to its ultimate recommendation. *See* Doc. 31 at 4:24–5:1, 7:17–19. The Court therefore must review those portions of the R&R de novo. In her opening brief, Reed seeks remand for reconsideration of evidence for two reasons: (1) failure to articulate clear and convincing reasons to discount Reed's symptom testimony; and (2) failure to properly analyze supportive opinion evidence. (Doc. 25 at 2.) Because the Court finds Reed's first argument persuasive and sufficient for remand, it does not reach Reed's second argument.

#### A. Reed's Symptom Testimony

When evaluating a claimant's testimony regarding pain and symptoms, an ALJ performs a two-step analysis to determine whether the testimony is credible. *Garrison v. Colson*, 759 F.3d 995, 1014 (9th Cir. 2014). At step one, the ALJ evaluates whether the claimant presented objective medical evidence of an underlying impairment that could reasonably produce the pain and symptoms alleged. *Id.*

Here, the ALJ determined that Reed's impairments could reasonably be expected to cause some of her alleged symptoms. AR 19. Specifically, the ALJ noted that Reed alleged impairments from asthma, MS, and scoliosis. *Id.* Her alleged medication side effects

included sleepiness, bruising, swelling, flu symptoms, and muscle weakness. *Id.* The ALJ further acknowledged Reed's testimony that her symptoms and medication side effects create difficulty walking, standing, sitting, lifting, and performing postural movements. *Id.* The ALJ also acknowledged that Reed reported removing stress to help reduce pseudo-flares, and that she experienced pseudo-flares every four to six weeks. *Id.*

At step two in the ALJ's credibility analysis, if there is no evidence of malingering, the ALJ can reject the claimant's testimony only by offering clear and convincing reasons for doing so. *Garrison*, at 1014–15. "This is not an easy requirement to meet: 'The clear and convincing standard is the most demanding required in Social Security cases.'" *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (citing *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)). Due to the care required in these cases, the Social Security Administration issued a Social Security Ruling ("SSR") to guide ALJs. The Court quotes this SSR at length because its discussion of multiple factors is critical:

> A report of . . . inconsistencies in the objective medical evidence is one of many factors we must consider in evaluating the intensity, persistence, and limiting effects of an individual's symptoms. . . . If we cannot make a [favorable decision] based solely on objective medical evidence, then we carefully consider other evidence in the record [such as:]
>
> . . . .
>
> [A. Evidence from individuals:] . . . An individual's statements may also include activities that precipitate or aggravate the symptoms, medications and treatments used, and other methods used to alleviate the symptoms. We will consider an individual's statements about the intensity, persistence, and limiting effects of symptoms, and we will evaluate whether the statements are consistent with objective medical evidence and the other evidence.
>
> . . . .
>
> [C. Evidence from non-medical sources:] Other sources may provide information from which we may draw inferences and conclusions about an individual's statements that would be helpful to us in assessing the intensity, persistence, and limiting effects of symptoms. Examples of such sources include . . . non-medical sources such as family and friends[.] . . . The adjudicator will consider any personal observations of the individual in terms of how consistent those observations are with the individual's statements about his or her symptoms as well as with all of the evidence in the file.

> . . . .
>
> [D. Additional factors:] In addition to using all of the evidence to evaluate the intensity, persistence, and limiting effects of an individual's symptoms, we will also use the factors set forth in 20 CFR 404.1529(c)(3) and 416.929(c)(3). These factors include:
>
>> 1. Daily activities;
>>
>> 2. The location, duration, frequency, and intensity of pain or other symptoms;
>>
>> 3. Factors that precipitate and aggravate the symptoms;
>>
>> 4. The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;
>>
>> 5. Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;
>>
>> 6. Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
>>
>> 7. Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.
>
> We will consider other evidence to evaluate only the factors that are relevant to assessing the intensity, persistence, and limiting effects of the individual's symptoms. If there is no information in the evidence of record regarding one of the factors, we will not discuss that specific factor in the determination or decision because it is not relevant to the case. We will discuss the factors pertinent to the evidence of record.

SSR 16-3p. Critically, the ALJ must "not disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms *solely* because the objective medical evidence does not substantiate the degree of impairment-related symptoms alleged by the individual." *Id.*

Here, the ALJ determined that Reed's "statements concerning the intensity, persistence, and limiting effects of [her] symptoms are not entirely consistent with the medical evidence." AR 19. Regarding Reed's MS, the ALJ noted that Reed was diagnosed in 2011, and that a 2019 MRI showed "no new or enhancing lesions and no significant

change since a prior diagnostic" in 2016. AR 19. The ALJ also noted that "in contrast to claimant's testimony, [Reed] indicated that she was back to baseline due to gradual improvement of her MS related symptoms as of April 19, 2018." AR 20. Finally, the ALJ noted "reports of improvement continu[ing] in the record, such as feeling really good on May 18, 2018, reporting feeling ready to return to work on June 18, 2018, and being stable and doing well on October, 2018." AR 20. The ALJ summarized these as "multiple inconsistencies between the claimant's allegations and the record as a whole[,]" emphasizing a "singular reported instance of actual reported flaring symptoms" and the fact that Reed's "'pseudo-flares' were unreported to any medical providers." AR 21. The ALJ concluded on this basis that "the objective evidence supports that the claimant retains the residual functional capacity detailed above." AR 21.

Reed objects that the ALJ failed to consider "the measures that she must take in order to prevent flares[.]" (Doc. 25 at 2.) Reed later clarifies that the "most egregious problem" with the ALJ's decision is that he "failed to consider that [Reed's] condition worsens under stress." (*Id.* at 8.) Reed draws on SSR 16-3p to show that the way a person structures their activities to avoid symptoms may be a highly relevant aspect of their disability. (*Id.*) Similarly, in her Reply, Reed emphasizes that her disability "is caused, not by current elevated symptoms, but rather by the measures [she] must take to prevent such symptoms." (Doc. 29 at 4.) In short, Reed argues that a "life of carefully balancing stress and activity levels to reduce symptoms" is "incompatible with full-time work." (*Id.* at 3.) The Court construes Reed's argument and reference to SSR 16-3p as claiming that the ALJ failed to consider all required factors in making his determination.

The Court agrees with Reed that the ALJ's decision did not consider all relevant factors as detailed in SSR 16-3p and associated regulations. The ALJ's decision was grounded solely in "inconsistencies in the objective evidence" of the persistence and intensity of Reed's MS symptoms. The ALJ begins the portion of his decision dealing with Reed's symptom testimony by saying "the claimant's statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the

medical evidence and other evidence in the record." AR 19. The ALJ expands on this inconsistency in the next two paragraphs—detailing many examinations after Reed's alleged disability date where she (1) did not report pseudo-flare symptoms occurring every four to six weeks; (2) displayed few if any limitations or symptoms; (3) stated that she was feeling good, stable, and doing well; and (4) stated that drug treatment for symptoms like fatigue and neuropathic pain was effective in managing her symptoms. AR 19–20. The Court notes that the ALJ's observations on this one factor were quite reasonable. But after introducing his analysis by stating that Reed's testimony was inconsistent with the medical evidence "and other evidence on the record," the ALJ did not subsequently discuss what "other evidence" he meant or refer to any other factor described by SSR 16-3p.

Contrasting SSR 16-3p's factors with the ALJ's analysis is revealing. When the medical record does not support a favorable decision, the SSR provides the ALJ must consider all other evidence and discuss all factors pertinent to the entire record. SSR 16-3p. The first such factor is in Section A: activities that precipitate or aggravate a claimant's symptoms. *Id.* But the ALJ does not analyze Reed's various statements about the sorts of activities that trigger flares or pseudo-flares and her ongoing efforts to avoid triggers so that her debilitating symptoms do not return. *See, e.g.*, AR 43–44 ("[I]t's a constant circle of I'm so tired that if I overexert myself, I have the pseudo-flares or the flares and then the stress of situations bring on flares or pseudo-flares[.] . . . My last neurologist [said] that I've had so many flares recently, since I was diagnosed, that there's only so many I can have before I'll be wheelchair-bound, and she said you've had so many. We don't know what that number is for you, but every time you're having another one, you're getting closer to being in a wheelchair. So, everything I do is trying to maintain a stress-free environment and trying to not overexert myself or get too tired."). The ALJ only acknowledges that Reed "reported removing stress" in a preceding paragraph that recounts her testimony without analyzing the credibility or (in)significance of that testimony. AR 19. The second SSR 16-3p recommended factor is in Section C: family member statements that provide relevant information. SSR 16-3p. But the ALJ's analysis does not mention Reed's mother's

two adult-function reports in which she states that Reed needs assistance dressing and bathing, is exhausted "all the time," and that "[a]ny stress throws her into a relapse." AR 275, 314, 319 (emphasis omitted). Finally, the next section of SSR 16-3p reiterates that the ALJ must use all relevant factors as set out by regulations 20 CFR 404.1529(c)(3) and 416.929(c)(3). Of the seven factors on this list, the ALJ analyzed only one: the frequency and intensity of symptoms.

Because the ALJ analyzed only one of several relevant factors and ignored at least two that might have changed his decision, the Court finds that the ALJ committed harmful error. As the SSR and associated regulations make clear, a single factor, no matter how strong, cannot adequately support an unfavorable decision. All other relevant factors must be considered. For this reason, the ALJ's decision does not meet the substantial evidence standard, much less the heightened "clear and convincing reasons" standard.

**B.   ORDER**

Accordingly,

**IT IS ORDERED ADOPTING IN PART** the Report and Recommendation, (Doc. 30), and **REVERSING AND REMANDING** the decision of the Commissioner. On remand, the Commissioner must consider whether Reed's RFC is changed by additional factors such as relevant third-party testimony, factors that aggravate or precipitate symptoms, measures Reed takes to limit her symptoms, or details of Reed's limited daily activities.

**IT IS FURTHER ORDERED DIRECTING** the Clerk of the Court to enter judgment accordingly and close this case.

Dated this 22nd day of September, 2022.

Honorable John C. Hinderaker
United States District Judge